STEVEN T. GUBNER - Bar No. 156593
COREY R. WEBER – Bar No. 205912
RYAN F. COY – Bar No. 324939
BRUTZKUS GUBNER
21650 Oxnard Street, Suite 500
Woodland Hills, CA  91367
Telephone: (818) 827-9000
Facsimile:  (818) 827-9099
Emails:    sgubner@bg.law
           cweber@bg.law
           rcoy@bg.law

Special Litigation Counsel for Heide Kurtz,
Chapter 7 Trustee

# UNITED STATES BANKRUPTCY COURT

## CENTRAL DISTRICT OF CALIFORNIA

### LOS ANGELES DIVISION

| | |
|---|---|
| In re<br><br>LATINO KIDS HEALTH,<br>*dba* LK Health,<br><br>             Debtor.<br>_____<br><br>HEIDE KURTZ, Chapter 7 Trustee,<br><br>             Plaintiff,<br><br>v.<br><br>RUBEN RUIZ, M.D.; CAMILO ESCHAVARRIA; FARRIS SHALBY; GINA ZAPANTA-MURPHY; ESMERALDA GARCIA; YOLANDA FLORES-MORENO; MONICA JARA GUERRA; MICHAEL DURAN; GABRIELA RAMOS; SAMUEL ROBLES; HECTOR VAZQUEZ; JACQUELINE MEJIA; ETHELRED E. CARTER, M.D; MARK GRANADO;  ETELVINA DE LA TORRE; ANA MONCADA; LINDA KOKLAS *aka* LINDA YOUNG; ALVA LUX, INC., a California corporation; | Case No.  2:20-bk-14903-SK<br><br>Chapter 7<br><br>Adv. No.  _____<br><br>**COMPLAINT FOR:**<br><br>**(1) BREACH OF FIDUCARY DUTY;**<br><br>**(2) AIDING AND ABETTING BREACH OF FIDUCIARY DUTY;**<br><br>**(3)  AVOIDANCE OF FRAUDULENT TRANSFERS (CONSTRUCTIVE FRAUD) [11 U.S.C. §§ 548(a)(1)(B) and 550];**<br><br>**(4)  AVOIDANCE OF FRAUDULENT TRANSFERS (CONSTRUCTIVE FRAUD) [11 U.S.C. §§ 544, 550; Cal. Civ. Code §§ 3439.04, 3439.05 and 3439.07];**<br><br>**(5) AVOIDANCE OF PREFERENTIAL TRANSFERS [11 U.S.C. §§ 547 and 550];**<br><br>**(6) RECOVERY OF AVOIDED TRANSFERS [11 U.S.C. § 550; Cal. Civ. Code § 3439.07];** |

| | |
|---|---|
| 1 | COBALT EQUITIES, LLC, a California limited liability company; GOLD COAST EQUITIES, LLC, a California limited liability company; SAPPHIRE COAST, LLC, a California limited liability company; RUIZ & COMPANY, INC., a California corporation; ROB BONTA, Attorney General for the State of California; and DOES 1-10, | **(7) DISALLOWANCE OF CLAIMS AND PRESERVATION OF THE BENEFIT OF AVOIDED TRANSFERS [11 U.S.C. §§ 502(d), 544, 550, 551]; AND**<br><br>**(8) GROSS NEGLIGENCE** |

Defendants.

COMPLAINT

Plaintiff Heide Kurtz, in her capacity as the chapter 7 trustee (the "Trustee" or "Plaintiff") of the bankruptcy estate of debtor Latino Kids Health (the "Debtor"), hereby brings the following complaint against defendants Ruben Ruiz, M.D., an individual; Camilo Eschavarria, an individual; Farris Shalby, an individual; Gina Zapanta-Murphy, an individual; Esmeralda Garcia, an individual; Yolanda Flores-Moreno, an individual; Monica Jara Guerra, an individual; Michael Duran, an individual; Gabriela Ramos, an individual; Samuel Robles, an individual; Hector Vazquez, an individual; Jacqueline Mejia, an individual; Ethelred E. Carter, M.D., an individual; Mark Granado, an individual; Etelvina De La Torre, an individual; Ana Moncada, an individual; Linda Koklas *aka* Linda Young, an individual; Alva Lux, Inc., a California corporation; Cobalt Equities, LLC, a California limited liability company; Gold Coast Equities, LLC, a California limited liability company; Sapphire Coast, LLC, a California limited liability company; Ruiz & Company, Inc., a California corporation; and Does 1-10 (each "Defendant," or collectively, the "Defendants").  The Trustee also joins the Attorney General for the State of California, Rob Bonta, as a nominal party, but an indispensable defendant pursuant to California Corporations Code section 5233.  The Trustee alleges as follows:

## I.    NATURE OF PROCEEDING

1.    By and through this complaint (the "Complaint"), the Trustee seeks damages from the Defendants for breach of fiduciary duty, aiding and abetting breach of fiduciary duty, gross negligence, and also and seeks the avoidance and recovery of preferential and fraudulent transfers.

## II.    JURISDICTION AND VENUE

2.    This Court has jurisdiction over this Complaint pursuant to 28 U.S.C. §§ 157(b)(1), 157(b)(2)(A), 157(b)(2)(E), 157(b)(2)(O) and 1334.

3.    Venue is proper in this District pursuant to 28 U.S.C. §§ 1408, 1409.

4.    This action is a core proceeding pursuant to 11 U.S.C. §§ 544, 547, 548, 550.

5.    The Trustee, as the trustee of the Debtor's bankruptcy estate, has authority to pursue all claims and causes of action held by the Debtor's estate.

6.      The Trustee has standing to bring this adversary proceeding on behalf of the Debtor's estate.

**III.    REQUIRED PLEADING DISCLOSURE**

7.      Pursuant to Local Bankruptcy Rule 7008-1, the Trustee consents to the entry of a final order or judgment on this Complaint by this Court.

**IV.    PARTIES TO THE ACTION**

  **A.    Plaintiff**

8.      The Plaintiff is the duly appointed Trustee of the Debtor's bankruptcy estate and acts in this action not individually, but solely in her capacity as a chapter 7 trustee.

  **B.    Defendants**

9.      The Trustee is informed and believes and based thereon alleges that defendant Ruben Ruiz, M.D. ("Dr. Ruiz") was, at all relevant times herein was an officer and/or director and fiduciary of the Debtor.  Dr. Ruiz filed Proof of Claim No. 11-1 on September 9, 2020 in the Debtor's bankruptcy case.

10.     The Trustee is informed and believes and based thereon alleges that defendant Camilo Eschavarria ("Eschavarria") was, at all relevant times herein was, an individual that was an officer and/or director and fiduciary of the Debtor.

11.     The Trustee is informed and believes and based thereon alleges that defendant Farris "Frank" Shalby ("Shalby") was, at all relevant times herein was, an individual that was an officer and/or director and fiduciary of the Debtor.

12.     The Trustee is informed and believes and based thereon alleges that defendant Gina Zapanta-Murphy ("Zapanta") was, at all relevant times herein was, an individual that was an officer and/or director and fiduciary of the Debtor.

13.     The Trustee is informed and believes and based thereon alleges that defendant Esmeralda Garcia ("Garcia") was, at all relevant times herein was, an officer and/or director and fiduciary of the Debtor.

14.     The Trustee is informed and believes and based thereon alleges that defendant Yolanda Flores-Moreno ("Flores-Moreno") was, at all relevant times herein was, an individual that was an officer and/or director and fiduciary of the Debtor.

15.     The Trustee is informed and believes and based thereon alleges that defendant Monica Jara Guerra ("Jara") was, at all relevant times herein was, an individual that was an officer and/or director and fiduciary of the Debtor.

16.     The Trustee is informed and believes and based thereon alleges that defendant Michael Duran ("Duran") was, at all relevant times herein was, an individual that was an officer and/or director and fiduciary of the Debtor.

17.     The Trustee is informed and believes and based thereon alleges that defendant Gabriela Ramos ("Ramos") was, at all relevant times herein was, an individual that was an officer and/or director and fiduciary of the Debtor.

18.     The Trustee is informed and believes and based thereon alleges that defendant Samuel Robles ("Robles") was, at all relevant times herein was, an individual that was an officer and/or director and fiduciary of the Debtor.

19.     The Trustee is informed and believes and based thereon alleges that defendant Hector Vazquez ("Vazquez") was, at all relevant times herein was, an individual that was an officer and/or director, Chief Financial Officer and a fiduciary of the Debtor.

20.     The Trustee is informed and believes and based thereon alleges that defendant Jacqueline Mejia ("Mejia") was, at all relevant times herein was, an individual that was an officer and/or director and fiduciary of the Debtor.

21.     The Trustee is informed and believes and based thereon alleges that defendant Ethelred E. Carter, M.D. ("Dr. Carter") was, at all relevant times herein was, an individual that was an officer and/or director and fiduciary of the Debtor.

22.     The Trustee is informed and believes and based thereon alleges that defendant Mark Granado ("Granado") was, at all relevant times herein was, an individual that was an officer and/or director and fiduciary of the Debtor.

COMPLAINT

23.     The Trustee is informed and believes and based thereon alleges that defendant Etelvina De La Torre ("De La Torre") was, at all relevant times herein was, an individual that was an officer and/or director, Chief Executive Officer and fiduciary of the Debtor.

24.     The Trustee is informed and believes and based thereon alleges that defendant Ana Moncada ("Moncada") was, at all relevant times herein was, an individual that was an officer and/or director, Special Administrator and fiduciary of the Debtor.

25.     The Trustee is informed and believes and based thereon alleges that defendant Linda Koklas *aka* Linda Young ("Koklas") was, at all relevant times herein was, an individual that was an officer and/or director and fiduciary of the Debtor.

26.     The Trustee is informed and believes and based thereon alleges that defendant Alva Lux, Inc. ("Alva Lux") is, and at all relevant times herein was, a California corporation that conducted business in the Central District of California.

27.     The Trustee is informed and believes and based thereon alleges that defendant Cobalt Equities, LLC ("Cobalt Equities" or "Cobalt") is, and at all relevant times herein was, a California limited liability company that conducted business in the Central District of California.  Cobalt Equities filed Proof of Claim No. 10-1 on September 9, 2020 in the Debtor's bankruptcy case.

28.     The Trustee is informed and believes and based thereon alleges that defendant Gold Coast Equities, LLC ("Gold Coast") is, and at all relevant times herein was, a California limited liability company that conducted business in the Central District of California.  Gold Coast filed Proof of Claim No. 10-1 on September 9, 2020 in the Debtor's bankruptcy case.

29.     The Trustee is informed and believes and based thereon alleges that defendant Sapphire Coast, LLC ("Sapphire Coast") is, and at all relevant times herein was, a California limited liability company that conducted business in the Central District of California.

30.     The Trustee is informed and believes and based thereon alleges that defendant Ruiz & Company, Inc. is, and at all relevant times herein was, a California corporation that conducted business in the Central District of California.

COMPLAINT

31.     The Trustee is informed and believes, and based thereon alleges, that at all times relevant herein, that each of the foregoing Defendants was acting in concert with the other Defendants, aided and abetted, and in doing the things alleged herein, was acting within the scope of their authority as such agent, employee, representative, director, officer and/or aider and abettor, with the advance knowledge, acquiescence, or subsequent ratification of each Defendant.

32.     The Trustee is informed and believes, and thereon alleges that each of the Defendants is responsible, negligently, intentionally and/or in some actionable manner, including as corporate successors liable for the acts of their predecessors, for the events referred to herein, and caused and continue to cause injuries and damages legally to Plaintiff, as alleged, either through Defendant's own conduct, or through the conduct of its agents, servants or employees, or due to the ownership, maintenance or control of the instrumentality causing them injury, or in some other actionable manner.

33.     The Trustee also joins and includes Rob Bonta, the Attorney General for the State of California, as an indispensable party to this action pursuant to Cal. Corp. Code § 5233 because of the self-dealing transaction allegations against a nonprofit public benefit corporation in California.

34.     The Trustee is ignorant of the true names and capacities of defendants sued herein as DOES 1 through 10, inclusive, and therefore sues these defendants by such fictitious names. Plaintiff will amend this Complaint to allege their true names and capacities when ascertained.

## V.    GENERAL ALLEGATIONS

### A.    General Background

35.     The Debtor was a Federally Qualified Health Center ("FQHC") organized as a nonprofit, tax-exempt public benefit corporation in California that provided primary care services in underserved areas.

36.     In June 2013, the Debtor was formed by Dr. Ruiz and fellow practitioners when they agreed to transfer the net assets of their primary care medical group to form a new nonprofit public benefit medical corporation known as *Latino Kids Health, Inc.*, which had a mission to enhance primary care services in underserved urban and rural communities.

COMPLAINT

37.     The Debtor provided healthcare services throughout East Los Angeles, Metro Los Angeles, and the San Gabriel Valley areas.

38.     The Debtor's bankruptcy case was commenced on or about May 29, 2020 ("Petition Date") when the Debtor filed a voluntary petition for relief under chapter 7 of Title 11 of the United States Code ("Code"), Case No. 2:20-bk-14903-SK, which case is currently pending in the United States Bankruptcy Court for the Central District of California.

**B.      The Debtor's Directors and Officers and Duties to Nonprofit Public Benefit Corporations**

39.     The claims against the Debtor's directors and officers, Dr. Ruiz, Eschavarria, Shalby, Zapanta, Garcia, Flores-Moreno, Jara, Duran, Ramos, Robles, Vazquez, Mejia, Dr. Carter, Granado, De La Torre, Moncada and Koklas (collectively, the "D&Os"), center around breaches of fiduciary duties and gross negligence related to ignoring conflicts of interest and approval of and engagement in transactions with interested parties for the benefit of Dr. Ruben Ruiz, who at various times was the Chief Executive Officer ("CEO") and/or the Chief Medical Officer ("CMO") of the Debtor. At times when Dr. Ruiz was the CMO of the Debtor, he also continued to attend meetings of the Board of Directors and engaged in actions on behalf of the Debtor as if he was also the CEO or person in control of the Debtor. The Trustee is informed and believes, and based thereon alleges, that the Debtor's Board meeting minutes reflect that Dr. Ruiz attended and participated in most of the Board meetings, including Board meetings during 2017 and 2018 as follows: on February 27, 2017, March 11, 2017, April 17, 2017, May 15, 2017, June 19, 2017, July 17, 2017, August 21, 2017, October 16, 2017, January 6, 2018, February 19, 2018, March 19, 2018, April 16, 2018, April 30, 2018, May 21, 2018, June 18, 2018 and August 20, 2018.

40.     The Trustee is informed and believes, and based thereon alleges, that on May 19, 2015, Dr. Ruiz resigned his position as Co-CEO of the Debtor and became CMO of the Debtor, and the Board approved the change in status. Notwithstanding the change in title, Dr. Ruiz continued to take actions with regard to the Debtor that were consistent with actions of the CEO or person in control of the Debtor. The Trustee is informed and believes, and based thereon alleges, that the

COMPLAINT

Board meeting minutes from May 21, 2018 state that "Martha addressed Dr. Ruiz, explaining to him that moving forward it is the expectation of the board that he work as a CMO and held as a CMO. She clearly stated the expectations of the board to build productive relationships. Martha voiced a concern that a drop in patient numbers may have to do with the leadership or lack of in the clinic, a result of disfunction [*sic*] within the leadership. It was made clear that the board is expecting him to be a CMO and not a CEO. He cannot engage in the activities outside of the responsibilities of the CMO, including compensation. Dr. Ruiz was urged to get to know the boundaries of his position as new CEO is backed by the board and previous issues will not be tolerated. The board will hold him accountable for his actions moving forward. Martha stated that LK Health is not a private clinic, rather it is HRSA's clinic."

41.    While certain D&Os directly caused the objectionable transactions set forth in this Complaint, others also breached their fiduciary duties by not preventing the transactions despite the D&Os' duty to do so, and the D&Os, as the Defendants, are jointly and severally liable for the damages caused by their breaches of duties, even if they did not personally or directly receive any of the benefits from the transactions.

42.    The D&Os were required to comply with their fiduciary duties and responsibilities under the California Corporations Code, including but not limited to § 5237, to perform their duties as a director or officer of the Debtor in good faith, and in a manner that is in the best interest of the Debtor and with such due care, including reasonable inquiry, and as an ordinarily prudent person in a like position under similar circumstances.

43.    In or about 2017, the Debtor's board of directors approved a "Conflict of Interest—Financial Management" policy, which states:

> The purpose of the conflict of interest policy is to protect LK Health's interest when it enters into a transaction or arrangement that might benefit the private interest of an officer or director of LK Health or might result in a possible excess benefit transaction.

> LK Health prohibits all staff, volunteers, board members, agents, consultants, and those who furnish goods or services to LK Health ("Interested Persons") from involvement in transactions or matters in which a real or apparent conflict of interest exists. Interested Persons must comply with LK Health's Code of Business Ethics and Conduct.

This policy is intended to supplement but not replace any applicable state and federal laws governing conflict of interest applicable to nonprofit and charitable organizations.

44.     The Debtor's conflict of interest policy further states: "Interested Persons are prohibited from operating or acting in a manner that creates a conflict or appears to create a conflict with the interests of LK Health and any organization in which the individual has a personal, business or financial interest."

**C.     The D&Os Ignored Conflicts of Interest Associated with Interested Party Transactions, Did Not Act in Good Faith, Did Not Engage In or Perform Diligence, and Permitted Dr. Ruiz and His Companies and Relatives to Engage in Transactions with the Debtor that were for Dr. Ruiz's Benefit and Not in the Best Interests of the Debtor.**

45.     The Trustee is informed and believes, and based thereon alleges, that the D&Os breached their fiduciary duties to the Debtor by, among other reasons, entering into agreements with and causing payments to be made to or for the benefit of Dr. Ruiz, his relatives and companies for which Dr. Ruiz was an officer, director, member, manager or person in control of the companies without regard to conflicts of interst.  The interested party transactions entered into by the Debtor at times when Dr. Ruiz was an officer of the Debtor and also was an officer, director, member, manager or person in control of the contracting party included:

(1) Gold Coast Equities, LLC ("Gold Coast") for records storage with rent of $3,068 per month (the "Storage Lease");

(2) Cobalt Equities, LLC ("Cobalt") for commercial office space at 901 West Whittier Boulevard, Montebello, CA (the "Whittier Lease") with rent of $18,810 per month;

(3) Cobalt for a parking lot lease at 117 Spruce Street, Montebello, CA (the "Parking Lot Lease") with rent of $1,250 per month;

(4) Alva Lux, Inc. for lines of credit;

(5) Sapphire Coast, LLC for a promissory note and line of credit;

(6) Ruiz & Company, Inc.;

(7) Dr. Ruiz for additional payments and benefits for full-time services when the amounts Dr. Ruiz was receiving in compensation were significantly over the market value and when Dr. Ruiz was not providing full-time services to the Debtor; and

(8) Relatives of Dr. Ruiz, including his daughter and his sister, who were employed and paid by the Debtor.

The foregoing transactions shall be collectively referred to as the "Interested Party Transactions."  The Trustee is informed and believes, and based thereon alleges, that the Interested Party Transactions resulted in the making of unlawful distributions of the Debtor's assets, and the making of loans or guaranties contrary to the California Corporations Code, including § 5236.  The Trustee is further informed and believes, and based thereon alleges, that Interested Party Transactions took place at times when the Debtor was insolvent and/or unable to pay debts as they became due.

46.    The Trustee is informed and believes, and based thereon alleges, that at all times relevant hereto, Dr. Ruiz was: (1) the Managing Member of Gold Coast; (2) the Managing Partner of Cobalt; (3) the President of Alva Lux, Inc.; (4) the Managing Partner for Sapphire Coast, LLC; and (5) the CEO, Secretary, CFO, and director of Ruiz & Company, Inc.

47.    The Trustee is informed and believes, and based thereon alleges, that between 2017 and 2020, the Debtor made transfers as part of the Interested Party Transactions including transfers to Dr. Ruiz's companies as follows: (1) $224,252.00 paid to Alva Lux, Inc.; (2) $269,994.78 paid to Ruiz & Company, Inc.; and (3) $751,503.12 paid to Gold Coast as follows::

**Alva Lux, Inc.**

| Date | Amount |
|------|--------|
| 2/2/17 | $20,000.00 |
| 2/27/17 | $20,000.00 |
| 3/28/17 | $184,252 |
| **TOTAL** | **$224,252.00** |

**Ruiz & Company, Inc.**

| Date | Amount |
|------|--------|
| 1/26/17 | $3,251.40 |

COMPLAINT

| | |
|---|---|
| 2/1/17 | $4,049.72 |
| 2/24/17 | $4,289.97 |
| 3/3/17 | $6,090.62 |
| 4/18/17 | $8,404.04 |
| 4/28/17 | $9,749.89 |
| 5/16/17 | $6,470.15 |
| 5/26/17 | $327.27 |
| 6/23/17 | $12,905.20 |
| 6/30/17 | $6,012.52 |
| 7/21/17 | $6,300.54 |
| 8/4/17 | $5,715.56 |
| 8/25/17 | $5,836.98 |
| 8/31/17 | $5,681.91 |
| 9/22/17 | $5,880.70 |
| 9/28/17 | $5,681.61 |
| 10/27/17 | $12,464.40 |
| 12/8/17 | $11,684.30 |
| 12/15/17 | $6,808.77 |
| 1/5/18 | $6,783.13 |
| 1/19/18 | $8,132.37 |
| 2/2/18 | $8,275.50 |
| 2/16/18 | $8,963.87 |
| 3/2/18 | $8,366.62 |
| 3/9/18 | $732.78 |
| 4/13/18 | $16,207.50 |

12

COMPLAINT

| 4/27/18 | $17,829.80 |
| 5/25/18 | $8,258.05 |
| 6/1/18 | $8,152.70 |
| 7/13/18 | $23,267.70 |
| 8/3/18 | $6,057.45 |
| 8/24/18 | $7,073.42 |
| 9/1/18 | $6,145.87 |
| 10/9/18 | $8,142.47 |
| **TOTAL** | **$269,994.78** |

**Gold Coast Equities**

| Date | Amount |
| --- | --- |
| 1/17/17 | $10,000.00 |
| 2/2/17 | $10,000.00 |
| 2/27/17 | $10,000.00 |
| 3/31/17 | $10,000.00 |
| 4/28/17 | $10,000.00 |
| 6/2/17 | $10,000.00 |
| 7/3/17 | $10,000.00 |
| 8/4/17 | $10,000.00 |
| 8/31/17 | $10,000.00 |
| 10/1/17 | $10,000.00 |
| 11/1/17 | $10,000.00 |
| 11/13/17 | $154,842.00 |
| 12/1/17 | $23,125.00 |

COMPLAINT

| | |
|---|---|
| 1/1/18 | $23,125.00 |
| 2/1/18 | $23,125.00 |
| 3/2/18 | $23,125.00 |
| 4/2/18 | $23,125.00 |
| 5/1/18 | $23,125.00 |
| 6/1/18 | $23,125.00 |
| 7/2/18 | $23,125.00 |
| 8/1/18 | $23,125.00 |
| 9/1/18 | $23,125.00 |
| 10/1/18 | $21,275.40 |
| 10/15/18 | $3,065.00 |
| 10/17/18 | $2,009.97 |
| 11/1/18 | $31,833.70 |
| 11/13/18 | $3,065.00 |
| 12/1/18 | $21,275.40 |
| 12/13/18 | $132.57 |
| 1/3/19 | $21,743.50 |
| 2/18/19 | $32,301.70 |
| 2/28/19 | $21,743.50 |
| 1/9/20 | $22,230.15 |
| 1/16/20 | $7,417.95 |
| 1/21/20 | $3,081.12 |
| 2/1/20 | $22,230.15 |
| 2/10/20 | $815.97 |
| 2/19/20 | $7,933.48 |

COMPLAINT

| | |
|---|---|
| 2/19/20 | $3,256.56 |
| **TOTAL** | **$721,503.12** |

**D.**   **Dr. Ruiz Received Compensation from the Debtor Substantially in Excess of the Value of His Services and While Dr. Ruiz Only Worked Part Time for the Debtor**

48.    The Trustee is informed and believes, and based thereon alleges, that for 2017, Dr. Ruiz was paid $288,640 for his contribution of "in-kind services" to the Debtor.  The Trustee is informed and believes, and based thereon alleges, that Dr. Ruiz's "in-kind services" were grossly overvalued because Dr. Ruiz only spent part of his time performing services for the Debtor, even though Dr. Ruiz was required to work a full-time schedule with the Debtor.  The Trustee is informed and believes, and based thereon alleges, that while Dr. Ruiz did not work a full-time schedule and dedicated significant time to other entities, he still received full amounts for a full-time schedule from the Debtor.  The Trustee is informed and believes, and based thereon alleges, that in June 2018, a human resource consultant reviewed the Debtor's compensation paid to Dr. Ruiz and others and determined that compensation for all executive officers was above market rates and, as CMO, that Dr. Ruiz's compensation was more than 50% over the market average.

49.    The Trustee is informed and believes, and based thereon alleges, that also on September 6, 2018, the Debtor's Board of Directors approved a resolution stating that "the HR Audit Report of June 27, 2018 from IEH Human Resources Consultants determined that compensation for chief officers, including the CFO, were for above market rates," that "the Corporation has current contracts with four entities managed or controlled by Ruben Ruiz, the Chief Medical Officer of the Corporation, representing a conflict of interest," "comparison information suggests that these contracts are above market rate," "above-market-rate compensation or benefit from a non-profit corporation to an interested party ("Excess Benefit") like the officer of the corporation must be reported by the non-profit corporation to the IRS," "failure to report Excess Benefits to the IRS can result in revocation of the tax-exempt status of a non-profit corporation," "as an agent of the

COMPLAINT

Corporation, the CFO has a duty of loyalty to the Corporation to act in the best interests of the Corporation and advise the Board about risks to the Corporation, including possible excess benefit transactions and conflicts of interest."

**E.    The Debtor's Interested Party Transactions with Dr. Ruiz's Companies.**

50.    The Trustee is informed and believes, and based thereon alleges, that on July 28, 2014, the Debtor entered into a Customer Agreement with Gold Coast Equities, LLC for storage services/records management notwithstanding that it was an interested party transaction given Dr. Ruiz's relationship with both the Debtor and Gold Coast Equities.  Dr. Ruiz signed the agreement as Managing Member of Gold Coast Equities during the same period when he was an officer of the Debtor.

51.    The Trustee is informed and believes, and based thereon alleges, that in a letter from the Debtor's CFO, Hector Vazquez, to Dr. Ruiz dated May 4, 2018 regarding an audit, Mr. Vazquez states: "LK Health has lease agreements with Cobalt Equities, LLC and Gold Coast Equities for facility, parking lot and storage usage.  At December 31, 2017, LK Health paid Gold Coast, LLC $225,720 for the facility lease.  The facility lease period is from January 1, 2015 through December 31, 2025.  In addition, for the year ended December 31, 2017, $36,780 was paid for medical records storage and parking lot usage in the amount $15,000, respectively.  These amounts represent full annual payments."

52.    The Trustee is informed and believes, and based thereon alleges, that on March 2, 2015, the Board approved a line of credit with Alva Lux in the amount of $175,000 with 10% interest notwithstanding that it was an interested party transaction given Dr. Ruiz's relationship with both the Debtor and Alva Lux without appropriate due diligence that the funds were necessary, without making a determination as to whether the funds were necessary absent payments to or for the benefit of Dr. Ruiz or his entities, and without due diligence that the terms were fair and reasonable.  The Trustee is informed and believes, and based thereon alleges, that on March 5, 2015, the Board approved a resolution to authorize staff to access the Alva Lux line of credit.  The Trustee

1  is informed and believes, and based thereon alleges, that on June 10, 2015, the Board approved an

2  increase in the line of credit with Alva Lux from $175,000 to $500,000.

3       53.    The Trustee is informed and believes, and based thereon alleges, that on September

4  15, 2015, the Board received a report from the Debtor's Chair, Michael Duran, that "the terms of the

5  Line of Credit with Alva Lux had changed effective August 1, 2015, from a loan amount of

6  $500,000 to $250,000 and interest rate of 10%, plus 1% late payment fee to an interest rate of

7  6.25%.  LK has borrowed $199,300 and incurred approximately $13,000 in interest and late fee

8  charges.  The new rate is in line with market rates."  On September 16, 2015, the Board minutes

9  reflect that the new terms were accepted on the line of credit.

10      54.    The Trustee is informed and believes, and based thereon alleges, that on November

11 19, 2016, at an Executive Committee meeting, De La Torre "informed the committee of the

12 revelation that the original terms of the line of credit with Alva Lux, Inc., were at odds with Dr.

13 Ruiz's original intent—triggering a demand letter from York, Howell & Guymon, Attorneys at Law,

14 acting on behalf of Dr. Ruiz, and a subsequent revision to the terms of the note previously signed by

15 board chairman, Michael Duran, for year two of the note.

16      55.    The Trustee is informed and believes, and based thereon alleges, that as of April 17,

17 2017, the line of credit to Alva Lux, Inc. had been paid in full.

18      **F.     The Debtor Was Insolvent and/or Unable to Pay Debts as They Became Due**

19              **During the Periods When the Debtor Entered Into the Interested Party**

20              **Transactions**

21      56.    As early as December 2016, there were concerns by the Debtor's board of directors

22 and independent auditors as to whether the Debtor could continue as a going concern due to its

23 financial condition.  The Trustee is informed and believes, and based thereon alleges, that a

24 memorandum to Board members on December 19, 2016 reported on the status of an audit and that

25 "[t]he audit is not complete.  According to BKD, 'The independent reviewer has asked if it would be

26 possible to get a confirmation or other support that the deferred rent and deferred compensation on

27 the cash flow forecast will not be requested to be paid by the health center until after December 2017

28

COMPLAINT

1   and that no repayment would be required on the line of credit payable to Alva Lux until after

2   December 2017 if there was not sufficient cash flow.'  I contacted the auditors at BKD and told them

3   that their request is not reasonable and that we want to begin to pay on the line of credit and rents

4   starting in January 2017.  They responded that they would have to include a footnote on the

5   management letter that this is an ongoing concern.  I am fine with that so that we can finalize this

6   process.  Below if the proposed language that they would include as part of the audit.  What are your

7   thoughts?"  The proposed auditor language included a going concern disclaimer as to doubt that the

8   Debtor would continue as a going concern:

9         a.     "The accompanying financial statements have been prepared assuming the
    Organization will continue as a going concern.  As discussed in Notes 1 and 11,
10   the Organization has received in-kind contributions of donated rent and salaries.
    If these expenses were required to be paid in full and not continued to be donated
11   or deferred, the Organization has insufficient funds to pay these expenses in full,
    which raises substantial doubt about its ability to continue as a going concern.
12   Management's plan in regard to these matters are also described in Note 13.  The
    financial statements do not include any adjustments that might result from the
13   outcome of this uncertainty."

14         b.     "Proposed wording for additional footnote disclosure: Note 13: Going Concern
15   Doubts Due to Payments of Certain Expenses.  During the audit period, the
    Organization has received in-kind contributions of donated rent and salaries.  If
16   these expenses were not continued to be donated or payment deferred, the
    Organization has insufficient funds to pay these expenses as they are incurred.
17   Management is seeking productivity increases and improving collection of
    accounts receivable to help improve cash flows.  The Organization has also
18   obtained a new line of credit.  The financial statements have been prepared
    assuming the Organization will continue as a going concern, realizing assets and
19   liquidating liabilities in the ordinary course of business.  Although not currently
    planned, realization of assets in other than the ordinary course of business in order
20   to meet liquidity needs could incur losses not reflected on these financial
    statements."

21   **F.      The Debtor's Rogue Board**

22   57.      The Trustee is informed and believes, and based thereon alleges, that on September 6,
23   2018, John Kotick was appointed as Interim CEO by the Board.

24   58.      The Trustee is informed and believes, and based thereon alleges, that in addition to
25   the Interested Party Transactions and the above-market salaries for the Debtor's directors and

26   officers, during 2018, a subset of directors working in concert with Dr. Ruiz—Farris Shalby, Gina

18

COMPLAINT

Zapanta-Murphy, and Esmeralda Garcia—held a secret and special meeting of the Debtor's board of directors without complying with the Debtor's Bylaws to call the special meeting and without notice to the other directors or to the Board's Chair.

59.     The Trustee is informed and believes, and based thereon alleges, that at the secret special meeting, a "rogue board" of Shalby, Zapanta, and Garcia purported to replace Martha Mullen as Chair of the Board and John Kotick as Interim CEO.

60.     The Trustee is informed and believes, and based thereon alleges, that at some point after the "rogue board" meeting, the rogue board changed the authorized signatories on the Debtor's bank account without knowledge or approval of the Board.

61.     The Trustee is informed and believes, and based thereon alleges, that the Debtor's Board, thereafter, addressed the actions of the rogue board and re-established the Board's authority over the Debtor.

62.     The Trustee is informed and believes, and based thereon alleges, that after re-establishing the Board's authority, Mullen and other board members were denied entry to the Debtor's clinic's offices.

63.     The Trustee is informed and believes, and based thereon alleges, that the Debtor, then, filed a complaint for declaratory and injunctive relief, and on October 11, 2018, the court granted a preliminary injunction against the defendants.

64.     The Trustee is informed and believes, and based thereon alleges, that the Board minutes from October 15, 2018 state that "John [Kotick] shared the resolution that was prepared by legal counsel as a result of the convening of a rogue board.  The resolution was read aloud and discussed by the board.  The resolution was to remove three board members who participated in a rouge board meeting.  Martha share that within the last few days, Esmeralda Garcia and Gina Zapanta had both resigned from the board.  The signing of this resolution would remove Farris "Frank" Shalby as the third current board member who participated in the rouge board."  The Trustee is informed and believes, and based thereon alleges, that the foregoing actions and transactions include breaches of fiduciary duty by the Debtor's D&Os that resulted in substantial

1  amounts improperly paid to or for the benefit of Dr. Ruiz and his companies and relatives, and these

2  transactions resulted in significant depletion of the Debtor's assets.

3      65.    The Trustee is informed and believes, and based thereon alleges, that after entry of

4  the injunction, Gold Coast (managed by Dr. Ruiz) sent a statement to the Debtor requesting payment

5  of property taxes from 2015 through June 2018 and issued retroactive rent increases from 2016

6  through September 2017 on the Parking Lot Lease and the Whittier Lease, which amounts did not

7  reflect the donated or forgiven rent and property taxes that were previously confirmed by Dr. Ruiz.

8      66.    The Trustee is informed and believes, and based thereon alleges, that the Debtor

9  incurred attorney's fees and costs associated with the actions of the Board members that participated

10  in the rogue board.

11      67.    The Trustee is informed and believes, and based thereon alleges, that on October 15,

12  2018, Dr. Ruiz resigned from the Debtor and demanded payment of $267,583.27 allegedly for work

13  and unused time off during 2018.

14  **G.    Dr. Ruiz's Actions Taken to the Detriment of the Debtor Following His**

15  **Resignation**

16      68.    The Trustee is informed and believes, and based thereon alleges, that following Dr.

17  Ruiz's resignation from the Debtor, Dr. Ruiz or one of his entities purchased a building across the

18  street from the Debtor and opened a competing clinic advertising that Dr. Ruiz and Ferrin Ruiz were

19  at the competing clinic.

20      69.    The Trustee is informed and believes, and based thereon alleges, that Dr. Ruiz' new

21  staff told patients that the Debtor was closed or closing, and that his staff approached patients on the

22  sidewalk on their way to the Debtor to encourage them to go to Dr. Ruiz's competing clinic.

23      70.    The Trustee is informed and believes, and based thereon alleges, that Dr. Ruiz's new

24  clinic raided the Debtor's employees and recruited the Debtor's front office employee, clinic

25  manager, a physician and two nurse practitioners.  In addition, the Trustee is informed and believes,

26  and based thereon alleges, that Dr. Ruiz' competing clinic attempted to recruit other of the Debtor's

27  employees.

28

COMPLAINT

71.     The Trustee is informed and believes, and based thereon alleges, that Dr. Ruiz'

competing clinic raiding the Debtor's employees impacted the Debtor's ability to function.  In

addition, the Trustee is informed and believes, and based thereon alleges, that one or more managed

care contracts with the Debtor moved the contracts to Dr. Ruiz' competing clinic and that the loss of

contracts resulted in a loss of income for the Debtor.

**FIRST CLAIM FOR RELIEF**

**BREACH OF FIDUCIARY DUTY**

**[Against Defendants Dr. Ruiz; Eschavarria; Shalby; Zapanta; Garcia; Flores-Moreno; Jara;**

**Duran; Ramos; Robles; Vazquez; Meija; Dr. Carter; Granado; De La Torre; Moncada; and**

**Koklas]**

72.     Plaintiff incorporates each of the general allegations as if fully set forth herein.

73.     The Trustee is informed and believes, and based thereon alleges, that each of the

D&Os served on the Debtor's Board of Directors or was an officer of the Debtor.  As a director or

officer of the Debtor, the D&Os owed fiduciaries duties to the Debtor, including but not limited to a

duty of loyalty, good faith and fair dealing, and an obligation to perform his or her duties on behalf

of the Debtor as a reasonably prudent person would do in a like position as a fiduciary of a business,

acting in the best interests of the Debtor.

74.     The D&Os, as fiduciaries of the Debtor, were required to act in the best interests of

the Debtor, were required to serve the Debtor in good faith, were required to avoid transactions that

would conflict with the Debtor's best interests, and were required to act with due care, including

reasonable inquiry.

75.     The Trustee is informed and believes, and based thereon alleges, that the Debtor's

conflict of interest policy prohibited officers and directors from operating or acting in a manner that

creates a conflict or appears to create a conflict with the interests of the Debtor and any organization

in which the individual has a personal, business, or financial interest.

76.     The D&Os breached their fiduciary duties owed to the Debtor when they approved or

allowed the Debtor to enter into transactions with Dr. Ruiz's businesses, including Alva Lux, Gold

1  Coast, Cobalt, Ruiz & Company, Inc., and Sapphire Coast, LLC notwithstanding any conflict.

2      77.    By approving or allowing the Debtor to enter into these transactions, the D&Os

3  operated or acted in a manner that created an actual or apparent conflict of interest between the

4  Debtor and the businesses in which Dr. Ruiz had a personal, business, or financial interest.

5      78.    The Trustee is informed and believes, and based thereon alleges, that the D&Os had

6  actual knowledge of Dr. Ruiz's personal, business, or financial interests in Alva Lux, Gold Coast,

7  Cobalt, Ruiz & Company, Inc., and Sapphire Coast, LLC.

8      79.    The Trustee is informed and believes, and based thereon alleges, that to the extent the

9  D&Os did not have actual knowledge of Dr. Ruiz's interests in businesses contracting with the

10  Debtor, the D&Os were required to make a reasonable inquiry into potential conflicts of interest with

11  such businesses.

12      80.    The Trustee is informed and believes, and based thereon alleges, that despite the

13  D&Os' actual or constructive knowledge of Dr. Ruiz's personal, business, and financial interests in

14  businesses transacting with the Debtor, the D&Os approved or allowed the Debtor to enter into

15  transactions with Alva Lux, Gold Coast, Cobalt, Ruiz & Company, Inc., and Sapphire Coast, LLC.

16      81.     The Trustee is informed and believes, and based thereon alleges, that the Debtor's

17  transactions with Alva Lux, Gold Coast, Cobalt, Ruiz & Company, Inc., and Sapphire Coast, LLC

18  were approved or entered into while the D&Os failed to act in the best interests of the Debtor.

19      82.    The Trustee is informed and believes, and based thereon alleges, that the Debtor's

20  transactions with Alva Lux, Gold Coast, Cobalt, Ruiz & Company, Inc., and Sapphire Coast, LLC

21  constituted, among other things, transactions not entered into in good faith and with reasonable

22  diligence.

23      83.    The Trustee is informed and believes, and based thereon alleges, that while certain

24  D&Os directly caused these objectionable transactions, others also breached their fiduciary duties to

25  the Debtor by not preventing the transactions despite their duty to do so.

26      84.    The Trustee is informed and believes, and based thereon alleges, that the D&Os

27  further breached their fiduciary duties by approving and allowing the Debtor to make payments to or

28

1    for the benefit of Dr. Ruiz for full-time services when the amounts he was receiving were

2    significantly above average for comparable positions and when Dr. Ruiz was not providing full-time

3    services to the Debtor.

4           85.    The Trustee is informed and believes, and based thereon alleges, that the D&Os

5    further breached their fiduciary duties by approving and allowing the Debtor to hire, employ, and

6    pay relatives of Dr. Ruiz, including his daughter and his sister.

7           86.    The Trustee is informed and believes, and based thereon alleges, that the D&Os are

8    jointly and severally liable for the damages caused even if they did not personally receive benefits

9    from the transactions.

10           87.    The Trustee is informed and believes, and based thereon alleges, that by breaching

11    their fiduciary duties to the Debtor, the D&Os directly and proximately caused damages to the

12    Debtor, including but not limited to, authorizing and approving the transactions and distributions to

13    Dr. Ruiz, his businesses, and his relatives, which resulted in the dissipation of corporate assets and

14    harm to the Debtor and its creditors, both individually and collectively, in an amount to be proven at

15    trial, but presently estimated to be at least $3,091,680.90.

16         **SECOND CLAIM FOR RELIEF**

17         **AIDING AND ABETTING BREACH OF FIDUCIARY DUTY**

18    **[Against Defendants Dr. Ruiz; Eschavarria; Shalby; Zapanta; Garcia; Flores-Moreno; Jara;**

19    **Duran; Ramos; Robles; Vazquez; Meija; Dr. Carter; Granado; De La Torre; Moncada; and**

20    **Koklas]**

21           88.    Plaintiff incorporates each of the general allegations as if fully set forth herein.

22           89.    The Trustee is informed and believes, and based thereon alleges, that the D&Os —

23    and most notably, Dr. Ruiz—breached their fiduciary duties to the Debtor.

24           90.    The Trustee is informed and believes, and based thereon alleges, that the D&Os had

25    actual knowledge that Dr. Ruiz was breaching his fiduciary duties to the Debtor.

26           91.    The Trustee is informed and believes, and based thereon alleges, that the D&Os gave

27    substantial assistance or encouragement to Dr. Ruiz in breaching his fiduciary duties to the Debtor.

28

COMPLAINT

92.     The Trustee is informed and believes, and based thereon alleges, that the D&Os acted with the intent to participate in the breach of fiduciary duty by Dr. Ruiz for the purpose of approving or authorizing transactions and payments constituting a breach of fiduciary duty by Dr. Ruiz.

93.     The Trustee is informed and believes, and based thereon alleges, that the D&Os' conduct was a substantial factor in the harm that was caused to the Debtor in an amount to be proven at trial, but presently estimated to be $3,091,680.90.

**THIRD CLAIM FOR RELIEF**

**AVOIDANCE OF 2-YEAR FRAUDULENT TRANSFERS (CONSTRUCTIVE FRAUD)**

**[11 U.S.C. §§ 548(a)(1)(B)]**

**[Against Defendants Dr. Ruiz, Gold Coast, Ruiz & Company, Inc.]**

94.     Plaintiff incorporates each of the general allegations as if fully set forth herein.

95.     The Trustee is informed and believes, and based thereon alleges, that during the two-year period immediately preceding the Petition Date, the Debtor made the transfers to or for the benefit of Defendants Dr. Ruiz, Gold Coast, and Ruiz & Company, Inc.—including, but not limited to, on the dates and in the amounts set forth in Paragraph 47 above.  The Trustee is informed and believes and based thereon alleges that each of the transfers to or for the benefit of the Defendants Dr. Ruiz, Gold Coast, and Ruiz & Company, Inc. was made: (a) without the Debtor receiving a reasonably equivalent value in exchange for such transfer; and (i) at a time when the Debtor was insolvent or as a result of which the Debtor became insolvent; or (ii), at a time that the Debtor was engaged in a business or a transaction, or was about to engage in a business or a transaction, for which any property remaining with the Debtor was an unreasonably small capital; (iii) at a time when the Debtor intended to incur, or believed or should reasonably have believed that the Debtor would incur, debts that would be beyond Debtor's ability to pay as such debts matured; or (iv) to or for the benefit of an insider, or such obligation was incurred to or for the benefit of an insider, under an employment contract and not in the ordinary course of business.

96.     The Trustee is informed and believes, and based thereon alleges, that the amounts paid to or for the benefit of Dr. Ruiz, Gold Coast, and Ruiz & Company, Inc. in the two-year period

COMPLAINT

1  preceding the Petition Date includes, but is not limited to, $58,839.61 paid to Ruiz & Company, Inc.;

2  $317,911.12 paid to Gold Coast; and the excess compensation and benefits Dr. Ruiz received in an

3  amount to be proven at trial.

4       97.    Accordingly, the transfers to or for the benefit of Defendants Dr. Ruiz, Gold Coast,

5  and Ruiz & Company, Inc. are avoidable pursuant to 11 U.S.C. § 548(a)(1)(B).

6  **FOURTH CLAIM FOR RELIEF**

7  **AVOIDANCE OF FRAUDULENT TRANSFERS (CONSTRUCTIVE FRAUD)**

8  **[11 U.S.C. §§ 544(b); Cal. Civ. Code §§ 3439.04(a)(2) and (b) or 3439.05 and 3439.07]**

9  **[Against Defendants Dr. Ruiz; Gold Coast Equities, LLC; Ruiz & Company, Inc.; Cobalt**

10  **Equities, LLC; Alva Lux, Inc.; and Sapphire Coast, LLC]**

11       98.    Plaintiff incorporates each of the general allegations as if fully set forth herein.

12       99.    The Trustee is informed and believes, and based thereon alleges, that the Debtor

13  made the transfers to or for the benefit of Defendants Dr. Ruiz; Gold Coast Equities, LLC; Ruiz &

14  Company, Inc.; Cobalt Equities, LLC; Alva Lux, Inc.; and Sapphire Coast, LLC—including, but not

15  limited to, on the dates and in the amounts set forth in Paragraph 47 above—without the Debtor

16  having received reasonably equivalent value in exchange for such transfers and obligations.

17       100.    The Trustee is informed and believes and based thereon alleges that during the four-

18  year period immediately preceding the Petition Date, the Debtor made transfers of the property to or

19  for the benefit of Defendants Dr. Ruiz; Gold Coast Equities, LLC; Ruiz & Company, Inc.; Cobalt

20  Equities, LLC; Alva Lux, Inc.; and Sapphire Coast, LLC.  The Trustee is informed and believes and

21  based thereon alleges that each of the transfers was made: (a) without the Debtor receiving a

22  reasonably equivalent value in exchange for such transfer; and (i) at a time when the Debtor was

23  insolvent or as a result of which the Debtor became insolvent; or (ii) at a time that the Debtor was

24  engaged in a business or a transaction, or was about to engage in a business or a transaction, for

25  which any property remaining with the Debtor was an unreasonably small capital; or (iii) at a time

26  when the Debtor intended to incur, or believed or should reasonably have believed that the Debtor

27  would incur, debts that would be beyond Debtor's ability to pay as such debts matured.

28

COMPLAINT

101.    The Trustee is informed and believes, and based thereon alleges, that the amounts paid or transferred to or for the benefit of Defendants Dr. Ruiz; Gold Coast Equities, LLC; Ruiz & Company, Inc.; Cobalt Equities, LLC; Alva Lux, Inc.; and Sapphire Coast, LLC in the four-year period preceding the Petition Date includes, but is not limited to:

a.    $288,640.00 to Dr. Ruiz in 2017;

b.    $224,252.00 to Alva Lux, Inc. in 2017;

c.    $269,994.78 to Ruiz & Company, Inc. in 2017 and 2018;

d.    $721,503.12 to Gold Coast Equities, LLC in 2017 through 2020;

e.    $287,040.00 to Cobalt Equities, LLC in 2017 and 2018; and

f.    $370,000.00 to Sapphire Coast, LLC for promissory note and line of credit.

The total amount paid to Dr. Ruiz and his companies from 2017 to the Petition Date is at least $2,161,429.90.

102.    Accordingly, the transfers and obligations made by the Debtor to or for the benefit of Defendants Dr. Ruiz; Gold Coast Equities, LLC; Ruiz & Company, Inc.; Cobalt Equities, LLC; Alva Lux, Inc.; and Sapphire Coast, LLC are avoidable pursuant to 11 U.S.C. §§ 544(b) and 550; and Cal. Civ. Code §§ 3439.04(a)(2) and (b) or 3439.05 and 3439.07.

**FIFTH CLAIM FOR RELIEF**

**AVOIDANCE OF PREFERENTIAL TRANSFERS**

**[11 U.S.C. §§ 547 and 550]**

**[Against Defendants Dr. Ruiz and Gold Coast]**

103.    Plaintiff incorporates each of the general allegations as if fully set forth herein.

104.    Dr. Ruiz and Gold Coast qualify as statutory or nonstatutory insiders of the Debtor.

105.    In the one year preceding the Debtor's bankruptcy filing, Dr. Ruiz received transfers of the Debtor's property through Gold Coast totaling $66,965.38 (the "Preference Transfers").

106.    Each of the Preference Transfers were made: (a) to or for the benefit of Dr. Ruiz and Gold Coast as creditors of the Debtor; (b) for or on account of an antecedent debt owed by the debtor before such transfer was made; (c) made while the Debtor was insolvent; (d) made within one year

1  prior to the Petition Date at times when Dr. Ruiz and Gold Coast were statutory and/or nonstatutory

2  insiders of the Debtor; and (e) enabled Dr. Ruiz and Gold Coast to receive more than they would

3  have received if the Preference Transfers had not been made and Defendants were to receive

4  payment on their claims only to the extent provided by chapter 7 of the Bankruptcy Code.

5      107.    For the foregoing reasons, pursuant to Section 547(b) of the Bankruptcy Code, the

6  Trustee may avoid the Preference Transfers.

7                          **SIXTH CLAIM FOR RELIEF**

8                      **RECOVERY OF AVOIDED TRANSFERS**

9            **[11 U.S.C. §§ 544, 547, 548, and 550; Cal. Civ. Code § 3439.07]**

10   **[Against Defendants Dr. Ruiz; Gold Coast Equities, LLC; Ruiz & Company, Inc.; Cobalt**

11              **Equities, LLC; Alva Lux, Inc.; and Sapphire Coast, LLC]**

12     108.    Plaintiff incorporates each of the general allegations as if fully set forth herein.

13     109.    Defendants Dr. Ruiz; Gold Coast Equities, LLC; Ruiz & Company, Inc.; Cobalt

14  Equities, LLC; Alva Lux, Inc.; and Sapphire Coast, LLC were the initial transferees or subsequent

15  transferees of the avoidable transfers identified above.

16     110.    By reason of the foregoing, Plaintiff is entitled to recover from Defendants Dr. Ruiz;

17  Gold Coast Equities, LLC; Ruiz & Company, Inc.; Cobalt Equities, LLC; Alva Lux, Inc.; and

18  Sapphire Coast, LLC the payments made to or for their benefit as fraudulent transfers and the

19  Preference Transfers, together with interest thereon at the maximum legal rate from and after the

20  date of each of such transfers, in sums according to proof but which Plaintiff estimates to be the total

21  sums listed above from Dr. Ruiz; Gold Coast Equities, LLC; Ruiz & Company, Inc.; Cobalt

22  Equities, LLC; Alva Lux, Inc.; and Sapphire Coast, LLC pursuant to 11 U.S.C. §§ 544, 547, 548,

23  550 and Cal. Civ. Code §§ 3439.04, 3439.05 and 3439.07.

24                         **SEVENTH CLAIM FOR RELIEF**

25                      **DISALLOWANCE OF CLAIMS AND**

26          **PRESERVATION OF BENEFIT OF AVOIDED TRANSFERS**

27                      **[11 U.S.C. §§ 502(d), 544, 550, 551]**

28

COMPLAINT

**[Against Defendants Dr. Ruiz; Gold Coast Equities, LLC; Ruiz & Company, Inc.; Cobalt Equities, LLC; Alva Lux, Inc.; and Sapphire Coast, LLC]**

111.  Plaintiff incorporates each of the general allegations as if fully set forth herein.

112.  To the extent that the transfers identified above are avoided and recovered pursuant to 11 U.S.C. §§ 544, 547, 548 and 550, the claims of Defendants Dr. Ruiz; Gold Coast Equities, LLC; Ruiz & Company, Inc.; Cobalt Equities, LLC; Alva Lux, Inc.; and Sapphire Coast, LLC against the bankruptcy estate, including Proofs of Claim Nos. 10-1 and 11-1 filed by Dr. Ruiz, Cobalt, and Gold Coast, shall be disallowed pursuant to 11 U.S.C. § 502(d) unless the Defendant has paid the avoided and recovered amounts to the Trustee.

113.  To the extent the transfers identified above are avoided pursuant to 11 U.S.C. §§ 544, 547, 548, the Trustee is entitled to have such transfers preserved for the benefit of the estate pursuant to 11 U.S.C. § 551.

**EIGHTH CLAIM FOR RELIEF**

**GROSS NEGLIGENCE**

**[Against Defendants Dr. Ruiz; Eschavarria; Shalby; Zapanta; Garcia; Flores-Moreno; Jara; Duran; Ramos; Robles; Vazquez; Meija; Dr. Carter; Granado; De La Torre; Moncada; and Koklas]**

114.  Plaintiff incorporates each of the general allegations as if fully set forth herein.

115.  The Trustee is informed and believes, and based thereon alleges, that in addition to the other fiduciary duties owed by D&Os to the Debtor, the D&Os owed a duty of care to the Debtor.

116.  The Trustee is informed and believes, and based thereon alleges, that the D&Os breached their duty of care to the Debtor by authorizing transactions or failing to prevent transactions with interested parties, including Dr. Ruiz, his businesses, and his relatives, that conflicted with the best interests and stated policies of the Debtor.

117.  The Trustee is informed and believes, and based thereon alleges, that the D&Os' breach of the duty of care caused actual harm to the Debtor because the Debtor improperly paid

28

COMPLAINT

1  substantial amounts to or for the benefit of Dr. Ruiz, his related businesses, and his relatives, which

2  caused significant depletion of the Debtor's assets.

3       118.    The Trustee is informed and believes, and based thereon alleges, that substantial

4  amounts being improperly paid to or for the benefit of Dr. Ruiz, his related businesses, and his

5  relatives was foreseeable consequence when the D&Os authorized the Debtor to enter into

6  transactions and make payments directly to individuals and entities that presented actual and

7  apparent conflicts of interest with the best interests of the Debtor's business.

8       119.    The Trustee is informed and believes, and based thereon alleges, that the D&Os'

9  conduct in breaching their duty of care to the Debtor was a departure from the ordinary standard of

10 care of a reasonably prudent person and presented want of even scant care because their conduct

11 indicates a passive and indifferent attitude towards the consequences that would result from

12 approving or failing to prevent payments and transactions to Dr. Ruiz, his related businesses, and his

13 relatives, especially when the Debtor's own conflict of interest policy (that the D&Os approved)

14 expressly prohibited such transactions.

15      120.    The Trustee is informed and believes, and based thereon alleges, that Defendants

16 caused damages to the Debtor in an amount to be proven at trial, but presently estimated to be

17 $3,091,680.90.

18 **VI.**    **PRAYER FOR RELIEF**

19      **WHEREFORE**, Plaintiff prays for a judgment hereon ordering the following relief:

20      **On the First Claim for Relief:**

21      1.    For general damages according to proof at trial, but no less than $3,091,680.90.

22      **On the Second Claim for Relief:**

23      2.    For general damages according to proof at trial, but no less than $3,091,680.90.

24      **On the Third Claim for Relief:**

25      3.    Avoidance of the transfers to or for the benefit of Defendant Dr. Ruiz**,** the exact

26 amount according to proof at trial, and the total amount of which presently alleged to be no less than

27 $376,750.73.

28

COMPLAINT

**As to All Claims for Relief:**

9.      Pre-judgment interest and post-judgment interest; and

10.     Such other and further relief as is just and proper.


DATED:   May 21, 2021                    BRUTZKUS GUBNER


                                         By: /s/ Ryan F. Coy
                                             Steven T. Gubner
                                             Corey R. Weber
                                             Ryan F. Coy
                                             Attorneys for Plaintiff Heide Kurtz,
                                             Chapter 7 Trustee

COMPLAINT

| Attorney or Party Name, Address, Telephone & FAX Nos., State Bar No. & Email Address | FOR COURT USE ONLY |
|---|---|
| STEVEN T. GUBNER - Bar No. 156593<br>COREY R. WEBER – Bar No. 205912<br>RYAN F. COY – Bar No. 324939<br>BRUTZKUS GUBNER<br>21650 Oxnard Street, Suite 500<br>Woodland Hills, CA  91367<br>Telephone: (818) 827-9000<br>Facsimile:  (818) 827-9099<br>Emails:  sgubner@bg.law, cweber@bg.law<br>rcoy@bg.law<br><br>*Attorney for Plaintiff* | |

### UNITED STATES BANKRUPTCY COURT
### CENTRAL DISTRICT OF CALIFORNIA - LOS ANGELES DIVISION

| In re:<br>LATINO KIDS HEALTH, dba LK Health,<br><br><br><br>Debtor(s). | CASE NO.: 2:20-bk-1490-SK<br><br>CHAPTER: 7<br><br>ADVERSARY NO.: |
|---|---|
| HEIDE KURTZ, Chapter 7 Trustee,<br><br><br><br><br>Plaintiff(s)<br>Versus<br>RUBEN RUIZ, M.D.; CAMILO ESCHAVARRIA; FARRIS SHALBY; GINA ZAPANTA-MURPHY; ESMERALDA GARCIA; YOLANDA FLORES-MORENO;<br>(See Attachment A for names of additional defendants)<br><br>Defendant(s) | **SUMMONS AND NOTICE OF STATUS CONFERENCE IN ADVERSARY PROCEEDING**<br>**[LBR 7004-1]** |

TO THE DEFENDANT:  A Complaint has been filed by the Plaintiff against you.  If you wish to defend against the Complaint, you must file with the court a written pleading in response to the Complaint.  You must also serve a copy of your written response on the party shown in the upper left-hand corner of this page.  The deadline to file and serve a written response is _____.  If you do not timely file and serve the response, the court may enter a judgment by default against you for the relief demanded in the Complaint.

A status conference in the adversary proceeding commenced by the Complaint has been set for:

> **Hearing Date:** _____     **Address:**
> **Time:** _____     ☒ 255 East Temple Street, Los Angeles, CA 90012
> **Courtroom:** _____     ☐ 3420 Twelfth Street, Riverside, CA 92501
>      ☐ 411 West Fourth Street, Santa Ana, CA 92701
>      ☐ 1415 State Street, Santa Barbara, CA 93101
>      ☐ 21041 Burbank Boulevard, Woodland Hills, CA 91367

This form is mandatory.  It has been approved for use in the United States Bankruptcy Court for the Central District of California.

**You must comply with LBR 7016-1, which requires you to file a joint status report and to appear at a status conference.** All parties must read and comply with the rule, even if you are representing yourself. You must cooperate with the other parties in the case and file a joint status report with the court and serve it on the appropriate parties at least 14 days before a status conference. A court-approved joint status report form is available on the court's website (LBR form F 7016-1.STATUS.REPORT) with an attachment for additional parties if necessary (LBR form F 7016-1.STATUS.REPORT.ATTACH). If the other parties do not cooperate in filing a joint status report, you still must file with the court a unilateral status report and the accompanying required declaration instead of a joint status report 7 days before the status conference. **The court may fine you or impose other sanctions if you do not file a status report. The court may also fine you or impose other sanctions if you fail to appear at a status conference.**

**KATHLEEN J. CAMPBELL**
**CLERK OF COURT**

Date of Issuance of Summons and Notice of Status Conference in Adversary Proceeding: _____

By: _____
                                          Deputy Clerk

This form is mandatory. It has been approved for use in the United States Bankruptcy Court for the Central District of California.

*December 2016*                                     Page 2                                **F 7004-1.SUMMONS.ADV.PROC**

| SHORT TITLE:<br>HEIDE KURTZ, Chapter 7 Trustee v. RUBEN RUIZ, M.D., et al. | CASE NUMBER: |
|---|---|

## INSTRUCTIONS FOR USE

→ This form may be used as an attachment to any summons if space does not permit the listing of all parties on the summons.

→ If this attachment is used, insert the following statement in the plaintiff or defendant box on the summons: "Additional Parties Attachment form is attached."

**List additional parties** *(Check only one box. Use a separate page for each type of party.)*:

| ☐ Plaintiff | ☒ Defendant | ☐ Cross-Complainant | ☐ Cross-Defendant |
|---|---|---|---|

MONICA JARA GUERRA; MICHAEL DURAN; GABRIELA RAMOS; SAMUEL ROBLES; HECTOR VAZQUEZ; JACQUELINE MEJIA; ETHELRED E. CARTER, M.D; MARK GRANADO; ETELVINA DE LA TORRE; ANA MONCADA; LINDA KOKLAS aka LINDA YOUNG; ALVA LUX, INC., a California corporation; COBALT EQUITIES, LLC, a California limited liability company; GOLD COAST EQUITIES, LLC, a California limited liability company; SAPPHIRE COAST, LLC, a California limited liability company; RUIZ & COMPANY, INC., a California corporation; ROB BONTA, Attorney General for the State of California; and DOES 1-10

Page ___1___ of ___1___

Page 1 of 1

**ADDITIONAL PARTIES ATTACHMENT**
**Attachment to Summons**

# PROOF OF SERVICE OF DOCUMENT

I am over the age of 18 and not a party to this bankruptcy case or adversary proceeding.  My business address is:



A true and correct copy (1) of the foregoing document entitled: **SUMMONS AND NOTICE OF STATUS CONFERENCE IN ADVERSARY PROCEEDING [LBR 7004-1]** and (2) the accompanying pleading(s) entitled:

_____

_____

will be served or was served **(a)** on the judge in chambers in the form and manner required by LBR 5005-2(d); and **(b)** in the manner stated below:

**1.  TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING (NEF)**:  Pursuant to controlling General Orders and LBR, the foregoing document will be served by the court via NEF and hyperlink to the document. On (*date*) _____, I checked the CM/ECF docket for this bankruptcy case or adversary proceeding and determined that the following persons are on the Electronic Mail Notice List to receive NEF transmission at the email addresses stated below:



☐ Service information continued on attached page

**2.  SERVED BY UNITED STATES MAIL**:
On (*date*) _____, I served the following persons and/or entities at the last known addresses in this bankruptcy case or adversary proceeding by placing a true and correct copy thereof in a sealed envelope in the United States mail, first class, postage prepaid, and addressed as follows. Listing the judge here constitutes a declaration that mailing to the judge <u>will be completed</u> no later than 24 hours after the document is filed.



☐ Service information continued on attached page

**3.  SERVED BY PERSONAL DELIVERY, OVERNIGHT MAIL, FACSIMILE TRANSMISSION OR EMAIL** (state method for each person or entity served):  Pursuant to F.R.Civ.P. 5 and/or controlling LBR, on (*date*) _____, I served the following persons and/or entities by personal delivery, overnight mail service, or (for those who consented in writing to such service method), by facsimile transmission and/or email as follows.  Listing the judge here constitutes a declaration that personal delivery on, or overnight mail to, the judge <u>will be completed</u> no later than 24 hours after the document is filed.



☐ Service information continued on attached page

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.

_____  _____  _____
_Date_          _Printed Name_          _Signature_

This form is mandatory.  It has been approved for use in the United States Bankruptcy Court for the Central District of California.

_December 2016_          Page 3          **F 7004-1.SUMMONS.ADV.PROC**